**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Ivan Espejo Salazar,<br>Omar Gonzales Arias,<br>Oscar Mira Fuentes,<br>Antonio Rojas Torres,<br>Rafael Sedeño Amaro, and<br>Antonio Vidal Rodriguez, | : | |
| Plaintiffs, | : | CIVIL ACTION NO: |
| v. | : | |
| Hamden Town House Restaurant,<br>T & S Food Corp., Inc.<br>ATA, LLC<br>Spiro Protopsaltis,<br>Dina Topcu,<br>Aristotle "Ari" Protopsaltis, and<br>Ahmet Topcu, | : | April 20, 2017 |
| Defendants | : | |

## COMPLAINT

1. Plaintiffs Ivan Espejo Salazar, Omar Gonzales Arias, Oscar Mira Fuentes, Antonio Rojas Torres, Rafael Sedeño Amaro, and Antonio Vidal Rodriguez worked together as employees at Defendants' restaurant, Hamden Town House Restaurant. They bring this civil action for damages for wage and hour violations and tortious conduct during the course of that employment.

2. Plaintiffs had no written contract or employment agreement with Defendants at any time. Defendants controlled Plaintiffs' hours and wages and paid Plaintiffs weekly at rates as low as, in some instances, $5.97, $4.20, or $3.14 per hour.

3. Plaintiffs worked between 53 and 72 hours every week and were never paid an overtime premium for the many hours they worked over 40 each week. When the restaurant was busy, they stayed late. Plaintiffs were not given rest breaks, and sometimes they were required to work as many as eight hours before Defendants permitted them to take a lunch break. On some busy afternoons, after working since 7:00 or 8:30 in the morning, Plaintiffs ate lunch standing, while continuing to work.

4. Defendants Dina and Ahmet Topcu would scream and yell at Plaintiffs for minor or imagined infractions. Plaintiffs looked on uncomfortably as their friends and coworkers were insulted and threatened. If Plaintiffs ever complained about their working conditions, Defendant Dina Topcu would yell, “There’s the door—just leave.” She accused Plaintiffs of being lazy and ungrateful.

5. Plaintiffs were expected to take on tasks outside their job descriptions and normal work hours. If they could not manage to do the extra work, Defendant Dina Topcu would berate them. While Plaintiff Gonzales Arias was employed as a busboy, he worked his normal twelve-hour shift each Monday and then had to stay late—sometimes until midnight—to clean the kitchen. When Plaintiff Sedeño Amaro started working as a busboy, he too had to clean the kitchen by himself after his Monday shift.

6. Plaintiff Sedeño Amaro was fired at the end of his shift on November 27, 2016 for failing to fill customers’ glass with ice and for failing to clean the dishes—two tasks that were not his responsibility. Defendants Ahmet and Dina Topcu verbally abused and insulted him. Defendant Ahmet Topcu, who is significantly taller and stronger than Plaintiff Sedeño Amaro, physically threatened Plaintiff Sedeño Amaro, coming within inches of his face.

7. Plaintiff Espejo Salazar was present when Plaintiff Sedeño Amaro was fired. He had to watch as his friend was publicly threatened and humiliated. The following Thursday, December 1, when Plaintiff Sedeño Amaro dropped Plaintiff Espejo Salazar off at work, Defendants Dina and Ahmet Topcu came out of the restaurant to threaten Plaintiff Sedeño Amaro again. Plaintiff Espejo Salazar heard them call his friend an ungrateful employee and tell him that they had "already called the cops" on him and were "calling them now." Defendant Dina Topcu warned that they "kn[e]w a lot of people in this town, more than you know." Plaintiff Espejo Salazar knew that Plaintiff Sedeño Amaro was already shaken from the previous day's events.

8. Days later, Plaintiff Espejo Salazar was publicly fired as well.

9. Plaintiffs Gonzales Arias and Mira Fuentes suffered substantial losses resulting from a fire on Defendants' property. Both had lived in a house that Defendants rented out to their employees. The house burned down, destroying all of Plaintiffs' possessions. Defendants collected insurance money as a result of the fire. But, while they compensated another employee for his losses, Plaintiffs were never compensated for their lost electronics and other items. The only reimbursement Plaintiffs received was a few garments from Wal-Mart.

10. Defendants did not take appropriate care of Plaintiffs' health and safety. Plaintiff Gonzales Arias was in the house when the fire started, and he injured his foot while escaping the burning building. Twice, doctors told Plaintiff Gonzales Arias to take time off for his injury, and twice, Defendants told him to return to work before his foot was fully healed. Fearful of losing his job if he stayed off his injured foot, Plaintiff Gonzales Arias complied.

11. When Plaintiff Espejo Salazar cut his hand with a knife in the kitchen, the only first aid supplies he found in the restaurant were band-aids that were too small to cover his

wound; he was forced to cover the cut with a dishtowel. Tammy, Defendant Ari Protopsaltis's wife and a waitress at the restaurant, drove Plaintiff Espejo Salazar to the hospital and warned him not to tell anyone that he had been injured at work. Plaintiff Espejo Salazar, like Plaintiff Gonzales Arias, was subsequently told to return to work before his injury was healed, and he was never paid any worker's compensation or sick leave.

12. Defendants ensured Plaintiffs' ignorance of their rights by failing to post appropriate notices or otherwise inform them of their rights under Connecticut and federal employment law.

13. Defendants also failed to keep proper records. Plaintiffs were paid in cash, without any receipts, punch cards, or any other formal method of tracking their pay, hours, and overtime. Each week, Plaintiffs signed a book that listed the date, their names, and the hours or pay for the week. The book consistently listed fewer hours than Plaintiffs actually worked or more pay than they actually received. The book did not record overtime or tip amounts. Without a signature in the book, Plaintiffs would be paid nothing at all. Plaintiffs did not protest because they were afraid of losing their jobs.

14. Plaintiffs wanted to do their work and get paid fairly. For example, Plaintiff Rojas Torres has spent the last fourteen years going to work and coming directly home each day; four of those years were spent working at Hamden Town House Restaurant. He is habitually quiet and tended to keep his head down at work. Defendants would sometimes deduct twenty dollars from his pay without explanation. Plaintiff Rojas Torres was too intimidated to ask why.

15. Plaintiffs bring this action to recover unpaid overtime wages, compensatory, punitive, and nominal damages, costs, and attorney's fees under the Fair Labor Standards Act and Connecticut statutory provisions.

**16.** Plaintiffs also bring this action to give courage to other exploited and mistreated workers who are kept purposefully ignorant of their rights, or who feel that they cannot assert their rights for fear of illegal retaliation.

## JURISDICTION AND VENUE

17. This court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

**18.** Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this complaint occurred within this judicial district.

## THE PARTIES

19. Plaintiffs Ivan Espejo Salazar, Omar Gonzales Arias, Oscar Mira Fuentes, Antonio Rojas Torres, Rafael Sedeño Amaro, and Antonio Vidal Rodriguez worked for the Defendants in their restaurant located at 2260 Whitney Avenue, Hamden, CT 06518. At all times relevant to the Complaint, Plaintiffs were employees within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(e)(1) and Connecticut General Statutes §§ 31-58(e) and 31-71a(2).

20. Defendant Hamden Town House Restaurant is a business entity located in Connecticut that:

a. Has a business address of 2260 Whitney Avenue, Hamden, CT 06518;

b. Has done more than $500,000 of business per year;

c. Is or has been owned and operated by Defendants Spiro Protopsaltis, Ari Protopsaltis, Dina Topcu, and Ahmet Topcu;

d. Purchased and used materials, such as food products and cleaning supplies, that originated outside of Connecticut; and

e. Therefore was an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d) and Connecticut General Statues §§ 31-58(d) and 31-71a(1).

21. Defendant T & S Food Corp., Inc. is a domestic corporation registered in Connecticut that:

a. Is affiliated with Hamden Town House Restaurant and other related entities;

b. Is secured by Defendant Spiro Protopsaltis;

c. Is operated by Defendants Dina Topcu, secretary and treasurer, and Ari Protopsaltis, president;

d. Has a business address of 2256 Whitney Avenue, Hamden, CT 06518;

e. Has done more than $500,000 of business per year;

f. Purchased and used materials, such as food products and cleaning supplies, that originated outside of Connecticut; and

g. Therefore was an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d) and Connecticut General Statues §§ 31-58(d) and 31-71a(1).

22. Defendant ATA, LLC is a domestic corporation registered in Connecticut that:

a. Is affiliated with Hamden Town House Restaurant and other related entities;

b. Is owned by Defendants Ahmet Topcu and Ari Protopsaltis.

c. Has a business address of 2256 Whitney Avenue, Hamden, CT 06518;

d. Has done more than $500,000 of business per year;

e. Purchased and used materials, such as food products and cleaning supplies, that originated outside of Connecticut; and

f. Therefore was an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d) and Connecticut General Statues §§ 31-58(d) and 31-71a(1).

23. Defendant Spiro Protopsaltis resides in Connecticut for a substantial portion of each year. Defendant Spiro Protopsaltis:

a. Operated Hamden Town House Restaurant and was an owner until 2015, including at times relevant to this Complaint;

b. Had the power to hire, pay, schedule, and supervise Hamden Town House Restaurant employees, including Plaintiffs;

c. Exercised these powers over Plaintiffs, including personally hiring Plaintiffs, personally giving Plaintiffs their paychecks, personally scheduling Plaintiffs' hours, and personally overseeing Plaintiffs' work; and

d. Therefore was an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d) and Connecticut General Statutes §§ 31-58(d) and 31-71a(1).

24. Defendant Dina Topcu resides in Connecticut. Defendant Dina Topcu:

a. Operates Hamden Town House Restaurant and is an owner;

b. Has the power to hire, pay, schedule, and supervise Hamden Town House Restaurant employees, including Plaintiffs;

c. Exercised these powers over Plaintiffs, including personally hiring and firing Plaintiffs, personally giving Plaintiffs their paychecks, personally scheduling Plaintiffs' hours, and personally overseeing Plaintiffs' work; and

d. Therefore was an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d) and Connecticut General Statutes §§ 31-58(d) and 31-71a(1).

25. Defendant Ari Protopsaltis resides in Connecticut. Defendant Ari Protopsaltis:

a. Operates Hamden Town House Restaurant and is an owner;

b. Has the power to hire, pay, schedule, and supervise Hamden Town House Restaurant employees, including Plaintiffs;

c. Exercised these powers over Plaintiffs, including personally giving Plaintiffs their paychecks, personally scheduling Plaintiffs' hours, and personally overseeing Plaintiffs' work; and

d. Therefore was an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d) and Connecticut General Statutes §§ 31-58(d) and 31-71a(1).

26. Defendant Ahmet Topcu resides in Connecticut. Defendant Ahmet Topcu:

a. Assists in operating Hamden Town House Restaurant and is married to Defendant Dina Topcu, one of the restaurant's owners;

b. Has the power to hire, pay, schedule, and supervise Hamden Town House Restaurant employees, including Plaintiffs;

c. Exercised these powers over Plaintiffs, including personally hiring and firing Plaintiffs, personally giving Plaintiffs their paychecks, personally scheduling Plaintiffs' hours, and personally overseeing Plaintiffs' work; and

d. Therefore was an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d) and Connecticut General Statutes §§ 31-58(d) and 31-71a(1).

## FACTS

### *Rafael Sedeño Amaro*

27. Defendants employed Plaintiff Rafael Sedeño Amaro as a dishwasher and busboy between November 2014 and November 2016.

28. From November 2014 to March 2015, Plaintiff Sedeño Amaro worked as a dishwasher for a regular workweek of 66 hours. During that period, Defendants paid him a weekly fixed salary of $430.

29. Beginning in March 2015, Plaintiff Sedeño Amaro started working as a busboy. From March 2015 to August 2015, Plaintiff Sedeño Amaro worked an average of 69 hours per week, and his weekly salary decreased to $290.

30. After he complained to Defendant Dina Topcu about his low wages in August 2015, she increased his weekly salary to $330.

31. While working as a bus boy, Plaintiff Sedeño Amaro received some tips from waitresses, but their amount varied and was not tracked or recorded by Defendants. As a busboy, he was required to stay after his twelve-hour shift on Mondays to clean the kitchen.

32. At all points in Plaintiff Sedeño Amaro's employment, his weekly salary was less than both federal and Connecticut state minimum wage, and Defendants never paid him an overtime premium for the hours that he worked over 40. For example:

a. During the week of December 7, 2014, to December 13, 2014, he worked for six days from 8:00 AM to 7:00 PM, for a total of 66 hours. He received a weekly salary of $430 and was not paid an overtime premium.

b. During the week of May 24, 2015, to May 30, 2015, he worked for four days from 8:30 AM to 8:30 PM; from 8:30 AM to about 10:30 PM on Monday; and from 8:00 AM to 3:00 PM on Sunday, for a total of 69 hours. He received a weekly salary of $290 and was not paid an overtime premium. His tips were not recorded this week.

c. During the week of January 17, 2016, to January 23, 2016, he worked for four days from 8:30 AM to 8:30 PM; from 8:30 PM to about 10:30 PM on Monday; and from 8:00 AM to 3:00 PM on Sunday, for a total of 69 hours. He received a weekly salary of $330 and was not paid an overtime premium. His tips were not recorded this week.

33. The afternoon of November 27, 2016 was like many others. The restaurant was very busy, and throughout the afternoon Defendant Dina Topcu yelled at Plaintiff Sedeño Amaro to make sure that customers had ice and clean glasses. She also ordered him to clean an area of the restaurant that was assigned to another busboy. Then, as was her habit, Defendant Topcu screamed at him for not working fast enough and for failing to clean dirty dishes, even though busboys were not responsible for washing dishes or serving customers. Late in the afternoon, about 30 minutes before Plaintiff Sedeño Amaro was scheduled to leave for the day, he went back to the kitchen, frustrated, exhausted, and ready to go home.

34. As Plaintiff Sedeño Amaro grabbed his jacket and prepared to leave, Defendant Ahmet Topcu started yelling at him in front of the kitchen staff for not doing as he was told. Eventually, Defendant Dina Topcu screamed at Plaintiff Sedeño Amaro to get out of the restaurant. Standing over six feet tall, Defendant Ahmet Topcu towered over Plaintiff Sedeño Amaro while the staff looked on. As Defendant Topcu came within inches of Plaintiff Sedeño Amaro and gestured aggressively in his face, Plaintiff Sedeño Amaro's exasperation and humiliation turned quickly to fear. Scared for his safety, Plaintiff Sedeño Amaro left the restaurant.

35. On December 1, Defendants again subjected Plaintiff Sedeño Amaro to threats and verbal abuse. That day, Plaintiff Sedeño Amaro returned to Hamden Town House Restaurant

to drop Plaintiff Espejo Salazar off for work. He was a few feet away from the door when Defendants Dina and Ahmet Topcu came outside to confront him once again. They yelled that he was not supposed to be there. They yelled at him for being an ungrateful employee. Defendant Dina Topcu threatened Plaintiff Sedeño Amaro, yelling "You wanna treat me like an asshole, I'll show you I'm an asshole." Defendant Ahmet Topcu said, "He's not gonna be shit in the world."

36. Defendant Dina Topcu then told Plaintiff Sedeño Amaro a terrifying lie. She said, "You're threatening that you're going to burn down my restaurant. I already called the cops." Defendant Ahmet Topcu later said, "I'm calling them now." Plaintiff Sedeño Amaro never threatened to burn down the restaurant and was frightened by this accusation. Defendants Dina and Ahmet Topcu told him not to come back to the restaurant again.

***Omar Gonzales Arias***

37. Defendants employed Plaintiff Omar Gonzales Arias as a busboy from about September 2010 to March 2012.

38. Defendants paid Plaintiff Gonzales Arias a weekly fixed salary of $220 for a regular workweek of 70 hours. After a fire destroyed Plaintiff Gonzales Arias' home, a house belonging to Defendants where he lived with several other employees, his weekly salary increased to $240.

39. On Mondays, he often worked 11 or 12 hours, from 8:30 in the morning until 7:30 or 8:30 at night, and then stayed to clean the kitchen—sometimes until as late as 11:00 PM or midnight. Plaintiff Gonzales Arias received some tips from waitresses, but their amount varied and was not tracked or recorded by Defendants.

40. Plaintiff Gonzales Arias' weekly salary was less than the Connecticut minimum wage for service employees, and Defendants never paid him an overtime premium for the hours that he worked over 40. For example:

a. During the week of October 2, 2010, to October 8, 2010, he worked for four days from 8:30 AM to 8:30 PM; from 8:30 AM to about 11:30 PM on Monday; and from 8:00 AM to 3:00 PM on Sunday, for a total of 70 hours. He received a weekly salary of $220 and was not paid an overtime premium. His tips were not recorded this week.

b. During the week of June 5, 2011, to June 11, 2011, he worked for four days from 8:30 AM to 8:30 PM; from 8:30 AM to about 11:30 PM on Monday; and from 8:00 AM to 3:00 PM on Sunday, for a total of 70 hours. He received a weekly salary of $240 and was not paid an overtime premium. His tips were not recorded this week.

c. During the week of August 12, 2011, to August 18, 2011, he worked for four days from 8:30 AM to 8:30 PM; from 8:30 AM to about 11:30 PM on Monday; and from 8:00 AM to 3:00 PM on Sunday, for a total of 70 hours. He received a weekly salary of $240 and was not paid an overtime premium. His tips were not recorded this week.

41. Defendants housed Plaintiffs Gonzales Arias and Mira Fuentes with several other employees in a house located at 102 School Street. On April 3, 2011, a fire broke out in the house, destroying virtually all of Plaintiffs' possessions. Defendants received an insurance payment for the loss of the building and indicated that the insurance would cover the items Plaintiffs had lost. However, aside from providing them with a few new garments from Wal-

Mart, Defendants never reimbursed Plaintiffs for the loss of any of their belongings, including a television, other electronics, clothes, money, documents, and additional personal items of significant value.

42. The night of the fire, the smoke detector in the house did not function properly. Plaintiff Gonzales Arias injured his foot as he ran down an unlit and smoke-filled flight of stairs to escape the burning building. Defendants only allowed him to take three unpaid days off of work.

43. Shortly thereafter, when his injury failed to heal properly, Plaintiff Gonzales Arias saw a second doctor in New York, who recommended that he take more time off. Despite having provided Defendants with a note from the second doctor, Plaintiff Gonzales Arias was again asked to come in to work after only four days of unpaid leave, which was once more an insufficient amount of time to meaningfully recuperate. He continues to suffer from tendonitis, pain, and fatigue as a result of this inadequate recovery.

***Oscar Mira Fuentes***

44. Defendants employed Plaintiff Oscar Mira Fuentes as a dishwasher, prep cook, and cook at various points between 2009 and 2015.

45. In 2009, when Plaintiff Mira Fuentes worked as a dishwasher with a regular workweek of 72 hours, Defendants paid him a weekly fixed salary of $430.

46. In 2011, when Plaintiff Mira Fuentes worked as a prep cook with a regular workweek of 72 hours, Defendants paid him a weekly fixed salary of $500.

47. In 2014 and 2015, when Plaintiff Mira Fuentes worked as a cook with a regular workweek of 53 hours, Defendants paid him a weekly fixed salary of $600.

48. At points during his employment, Plaintiff Mira Fuentes's weekly salary was less than both federal and Connecticut minimum wage, and Defendants never paid him an overtime premium for the hours that he worked over 40. For example:

a. During the week of July 5, 2009, to July 11, 2009, he worked for six days from 7:00 AM to 7:00 PM, for a total of 72 hours. He received a weekly salary of $430 and did not receive an overtime premium.

b. During the week of September 18, 2011, to September 24, 2011, he worked for six days from 9:00 AM to 9:00 PM, for a total of 72 hours. He received a weekly salary of $500 and did not receive an overtime premium.

c. During the week of January 4, 2015, January 10, 2015, he worked Monday and Tuesday from 12:00PM to 12:00AM; Friday from 2:00 PM to 11:00 PM; Saturday from 12:00 PM to 9:00 PM; and Sunday from 9:00 AM to 8:00 PM, for a total of 53 hours. He received a weekly salary of $600 and did not receive an overtime premium.

***49.*** As described above in ¶ 41, Defendants housed Plaintiffs Gonzales Arias and Mira Fuentes with several other employees in a house on 102 School Street. On April 3, 2011, a fire broke out at the house, destroying virtually all of Plaintiffs' possessions. Defendants received an insurance payment for the loss of the building. However, aside from providing Plaintiffs with a few new items of clothing, Defendants never reimbursed Plaintiffs Gonzales Arias and Mira Fuentes for their losses.

***Antonio Vidal Rodriguez***

50. Defendants employed Plaintiff Antonio Vidal Rodriguez as a dishwasher from June to October 2016.

51. At first, Defendants paid Plaintiff Vidal Rodriguez a weekly fixed salary of $440. During this time, Plaintiff Vidal Rodriguez worked a regular workweek of 60 hours. Then, when Plaintiff Vidal Rodriguez's workweek increased to 66 hours, Defendants paid him a fixed salary of $475.

52. Plaintiff Vidal Rodriguez's weekly salary was less than both federal and Connecticut state minimum wage, and Defendants never paid him an overtime premium for the hours that he worked over 40. For example:

a. During the week of July 10, 2016, to July 16, 2016, he worked for six days from 10:00 AM to 8:00 PM, for a total of 60 hours. He was paid a weekly salary of $440 and did not receive an overtime premium.

b. During the week of October 2, 2016, to October 8, 2016 he worked for six days from 9:00 AM to 8:00 PM, for a total of 66 hours. He was paid a weekly salary of $475 and did not receive an overtime premium.

53. While Defendants employed Plaintiff Vidal Rodriguez, he was seventeen years old. During this time, he worked a regular workweek in substantial excess of the 48 hours allowed for minors by state law. Plaintiff Vidal Rodriguez often worked as long, if not longer, than his adult coworkers. Defendants made no effort to ensure that Plaintiff Vidal Rodriguez was legally employed as a minor.

***Ivan Espejo Salazar***

54. Defendants employed Plaintiff Ivan Espejo Salazar as a dishwasher and prep cook at several points between 2008 and December 2016.

55. Plaintiff Espejo Salazar worked at Hamden Town House Restaurant for approximately two years of between 2008 and 2013. During that period, Defendants generally paid him a weekly fixed salary of $430 for approximately 60 hours of work each week.

56. Plaintiff Espejo Salazar began working continuously as a prep cook in June 2014. In 2014 and 2015, Defendants paid Plaintiff Espejo Salazar a weekly fixed salary of $500. During this time, Plaintiff Espejo Salazar worked a regular workweek of 62 hours.

57. From February to December 2016, he received a salary of $600 per week for 58 hours of work each week.

58. At points in Plaintiff Espejo Salazar's employment, his weekly salary was less than both federal and Connecticut state minimum wage, and Defendants never paid him an overtime premium for the hours that he worked over 40. For example:

a. During the week of June 15, 2014, to June 21, 2015, he worked for four week days from 10:00 AM to 8:00 PM and both weekend days from 9:00 AM to 8:00 PM, for a total of 62 hours. He received a weekly salary of $500 and received no overtime premium.

b. During the week of May 3, 2015, to May 9, 2015, he worked for four week days from 10:00 AM to 8:00 PM and both weekend days from 9:00 AM to 8:00 PM, for a total of 62 hours. He received a weekly salary of $500 and received no overtime premium.

c. During the week of November 13, 2016, to November 19, 2016, he worked for three week days from 10:00 AM to 10:00 PM and both weekend days from 9:00 AM to 8:00 PM, for a total of 58 hours. He received a weekly salary of $600 and received no overtime premium.

59. In June 2013, Plaintiff Espejo Salazar cut his hand while working in the kitchen. He was sharpening a chef's knife when the sharpener broke, and the knife sliced his palm. Defendants had not provided him with any training on the safe use of kitchen equipment, and there was no first-aid kit in the restaurant except for small bandages. Plaintiff Espejo Salazar wrapped his bloody hand in a dishrag, and Tammy, Defendant Ari Protopsaltis's wife, drove him to the hospital, instructing him on the way not to tell the doctors he had been injured at work.

60. Plaintiff Espejo Salazar received stitches at the hospital and was told not to return to work for two or three weeks. Defendants told him to return to work after one week, claimed that he was faking his injury, and threatened to replace him if he did not return to work. Plaintiff Espejo Salazar was never paid any worker's compensation and was not paid for the week of work that he missed.

***Antonio Rojas Torres***

61. Defendants employed Plaintiff Antonio Rojas Torres as a dishwasher from 2011 to August 2016.

62. In 2011 and 2012, when Plaintiff Rojas Torres worked a regular workweek of 60 hours, Defendants paid him a weekly fixed salary of $430.

63. From 2013 to August 2016, Plaintiff Rojas Torres worked an average of 54 hours per week, and his weekly salary increased to $440.

64. At points in Plaintiff Rojas Torres's employment, his weekly salary was less than both federal and Connecticut state minimum wage, and Defendants never paid him an overtime premium for the hours that he worked over 40. For example:

a. During the week of November 6, 2011, to November 12, 2011, he worked for six days from 7:00 AM to 5:00 PM, for a total of 60 hours. He received a weekly salary of $430 and received no overtime premium.

b. During the week of January 20, 2013, to January 26, 2013, he worked for six days from 7:00 AM to 4:00 PM, for a total of 54 hours. He received a weekly salary of $440 and received no overtime premium.

c. During the week of February 7, 2016, to February 13, 2016, he worked for six days from 7:00 AM to 4:00 PM, for a total of 54 hours. He received a weekly salary of $440 and received no overtime premium.

**65.** Plaintiff Rojas Torres was repeatedly paid $20 less than his usual weekly amount for no stated reason. Plaintiff Rojas Torres, an unassuming and determined worker, was continually discouraged that he was not being paid the salary promised to him. All he wanted was to do his work and get paid fairly. Yet Defendants never offered him an explanation for these unprovoked deductions, and they were not reflected in the book that tracked Plaintiffs' weekly wages.

**COUNT ONE – FAIR LABOR STANDARDS ACT**

**(Minimum Wage)**

66. By the conduct described above in ¶¶ 27-32 (Plaintiff Sedeño Amaro), 37-40 (Plaintiff Gonzales Arias), 44-48 (Plaintiff Mira Fuentes), 50-52 (Plaintiff Vidal Rodriguez), 54-58 (Plaintiff Espejo Salazar), and 61-64 (Plaintiff Rojas Torres), Defendants violated Plaintiffs' right to be paid a minimum wage consistent with the provisions of the Fair Labor Standards Act, 29 U.S.C. §201, et seq.

67. Defendants' conduct, as described above, was in willful violation of the Plaintiffs' rights pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. §201, et seq. As a result of the Defendants' unlawful conduct, the Plaintiffs have suffered a loss of compensation from employment that is due and owing to them.

**COUNT TWO – CONNECTICUT GENERAL STATUTES § 31-58, *et seq.***

**(Minimum Wage)**

68. By the conduct described above in ¶¶ 27-32 (Plaintiff Sedeño Amaro), 37-40 (Plaintiff Gonzales Arias), 44-48 (Plaintiff Mira Fuentes), 50-52 (Plaintiff Vidal Rodriguez), 54-58 (Plaintiff Espejo Salazar), and 61-64 (Plaintiff Rojas Torres), Defendants violated the Plaintiffs' right to be paid a minimum wage consistent with the provisions of Connecticut General Statutes §§ 31-60a and 31-76.

69. Defendants' violation of the Connecticut General Statutes was made in bad faith. As a result of the Defendants' unlawful conduct, the Plaintiffs have suffered a loss of compensation from employment that is due and owing to them.

**COUNT THREE – FAIR LABOR STANDARDS ACT**

**(Overtime)**

70. By the conduct described above in ¶¶ 27-32 (Plaintiff Sedeño Amaro), 37-40 (Plaintiff Gonzales Arias), 44-48 (Plaintiff Mira Fuentes), 50-52 (Plaintiff Vidal Rodriguez), 54-58 (Plaintiff Espejo Salazar), and 61-64 (Plaintiff Rojas Torres), Defendants violated the Plaintiffs' right to be paid an overtime premium consistent with the provisions of the Fair Labor Standards Act, 29 U.S.C. §201, et seq.

71. Defendants' conduct, as described above, was in willful violation of the Plaintiffs' rights pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. §201, et seq. As a

result of the Defendants' unlawful conduct, the Plaintiffs have suffered a loss of compensation from employment that is due and owing to them.

**COUNT FOUR – CONNECTICUT GENERAL STATUTES § 31-58, *et seq.***

**(Overtime)**

72. By the conduct described above in ¶¶ 27-32 (Plaintiff Sedeño Amaro), 37-40 (Plaintiff Gonzales Arias), 44-48 (Plaintiff Mira Fuentes), 50-52 (Plaintiff Vidal Rodriguez), 54-58 (Plaintiff Espejo Salazar), and 61-64 (Plaintiff Rojas Torres), Defendants violated the Plaintiffs' right to be paid an overtime premium in violation of Connecticut General Statutes §§ 31-60a and 31-76c.

73. Defendants' violation of the Connecticut General Statutes was made in bad faith. As a result of the Defendants' unlawful conduct, the Plaintiffs have suffered a loss of compensation from employment that is due and owing to them.

**COUNT FIVE – CONVERSION**

74. By the conduct described above in ¶¶ 9, 41, and 49, Defendants committed conversion. After the fire, they received insurance payouts, which they used to reimburse at least one resident of the house for his belongings, but did not use to reimburse Plaintiffs. By failing to reimburse them for their lost property, despite having collected insurance money as a result of the loss, Defendants deprived them of their items for an indefinite period of time. Defendants conduct was unauthorized by Plaintiffs. Plaintiffs were harmed by the loss, both due to the financial loss and emotional distress.

75. As described above in ¶¶ 41 and 49, Plaintiffs Gonzales Arias and Mira Fuentes lost property of significant value to them and were never compensated. They lost virtually all of their possessions.

**COUNT SIX – NEGLIGENCE**

**(Personal Injury)**

76. By the conduct described above in ¶¶ 10-11, 42-43, and 59-60, Defendants' negligence was a contributing factor in injuries suffered by Plaintiffs Omar Gonzales Arias and Ivan Espejo Salazar.

77. Plaintiff Omar Gonzales Arias was injured during a fire on Defendants' property. Defendants failed to light the stairwell where he escaped the building and failed to provide a functioning smoke detector. His injury was aggravated by Defendants' repeated insistence that he return to work before his foot was healed.

78. Plaintiff Ivan Espejo Salazar was injured by a knife during the course of his employment in the kitchen at Hamden Town House Restaurant. Defendants failed to provide any safety training to Plaintiff Espejo Salazar. Defendants failed to provide any first aid equipment except for band-aids that were too small to cover his wound. He was told to return to work before his hand had healed.

**79.** As described in the facts above, Plaintiffs Gonzales Arias and Espejo Salazar incurred costs and suffered pain and physical distress as a result of their injuries. They were never paid workers' compensation, were never compensated in any way for their injuries, and were not paid for time off.

**COUNT SEVEN – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

80. By the conduct described above in ¶¶ 6-7 and 33-36, Defendants Dina and Ahmet Topcu negligently inflicted emotional distress on Plaintiff Rafael Sedeño Amaro during his termination. Defendants' should have realized that their conduct involved an unreasonable risk

of causing distress that might result in illness or bodily harm. Defendants' conduct during and after Plaintiff Sedeño Amaro's termination was inconsiderate and humiliating.

81. As described above, Defendants threatened, physically intimidated, and insulted Plaintiff Sedeño Amaro, causing him to suffer severe and persistent emotional distress.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiffs pray that the Court award them:

1. All compensation due and owing to them by the Defendants;
2. Liquidated damages in equal amount to their unpaid minimum wages pursuant to 29 U.S.C. § 216(b);
3. Liquidated damages in equal amount to their unpaid overtime wages pursuant to 29 U.S.C. § 216(b);
4. Double damages for any violation of C.G.S. § 31-60 pursuant to C.G.S. § 31-68;
5. Double damages for any violation of C.G.S. § 31-71a to 31-71i pursuant to C.G.S. § 31-72;
6. Compensatory damages;
7. Punitive damages for Defendants' malicious and recklessly indifferent conduct;
8. Nominal damages;
9. Plaintiffs' costs and reasonable attorney's fees pursuant to 29 U.S.C. § 216(b) and C.G.S. §§ 31-68 and 31-72; and
10. Such other legal or equitable relief as the Court may deem just.

THE PLAINTIFFS

By: __/s/__________________

James Bhandary-Alexander, ct28135
Elizabeth Leiserson, Law Student Intern
Heather Richard, Law Student Intern
Elise Wander, Law Student Intern
New Haven Legal Assistance Assoc.
426 State Street
New Haven, CT 06510
(203) 946-4811
(203) 498-9271 fax
Email: jbhandary-alexander@nhlegal.org
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2017, a copy of the foregoing Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ James Bhandary-Alexander